UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHANLING SHUI, a foreign individual,<br><br>    Plaintiff,<br><br>vs.<br><br>PRODIGY NETWORK, LLC, a Delaware limited liability company, PRODIGY SHOREWOOD DOMESTIC FEEDER REP FUND, LLC, a Delaware limited liability company, 17 JOHN PREFERRED, INC, a Delaware corporation, PN NEWCO, INC, a Delaware corporation, and 84 WILLIAM STREET NEWCO, INC, a Delaware corporation,<br><br>    Defendants. | Civil Action No.:<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

Plaintiff Shanling Shui ("Plaintiff" or "Shui"), by and through her undersigned counsel, files this Complaint against Defendants Prodigy Network, LLC, Prodigy Shorewood Domestic Feeder REP Fund, LLC, 17 John Preferred, Inc., PN NewCo, Inc., and 84 William Street NewCo, Inc. (together "Defendants"), and alleges:

### NATURE OF THE ACTION

1. This action is brought to recover damages arising out of the Defendants' breach of their agreements with the Plaintiff, as detailed herein.

### PARTIES

2. Plaintiff Shanling Shui is a citizen and resident of the People's Republic of China ("PRC").

3. Defendant Prodigy Network, LLC ("Prodigy") is a Delaware limited liability company with its principal place of business in the State of New York. Upon information and belief, none of Prodigy's members are citizens of the PRC.

4. Defendant Prodigy Shorewood Domestic Feeder REP Fund, LLC ("Shorewood") is a Delaware limited liability company. Upon information and belief, none of Shorewood's members are citizens of the PRC.

5. Defendant 17 John Preferred, Inc. ("Preferred") is a Delaware corporation, with its principal place of business in the State of New York.

6. Defendant PN NewCo, Inc. ("PN") is a Delaware corporation with its principal place of business in the State of New York.

7. Defendant 84 William Street NewCo, Inc. ("84 William") is a Delaware corporation with its principal place of business in the State of New York.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over the parties and the claims of this action pursuant to 28 U.S.C. § 1332(a)(2) because the action is between citizens of different states and the amount in controversy exceeds $75,000.

9. This Court has personal jurisdiction over the parties and venue is proper in this Court, pursuant to Section IX, or X, of the applicable Subscription Agreements, which provide in relevant part:

> This Subscription Agreement shall be governed by the laws of New York. Each party irrevocably agrees to submit to the exclusive jurisdiction of the state and federal courts situated in New York City, New York over any claim arising under or in connection with this Subscription Agreement.

10. Venue is also proper pursuant to 28 U.S.C. § 1391 because the Defendants maintain their principal place of business, and a substantial portion of the events that give rise to the underlying claims occurred, in the Southern District of New York.

## FACTUAL BACKGROUND

11. Prodigy is in the business of providing real estate investment opportunities to international clientele; it operates the majority of its real estate opportunities through its various subsidiaries and affiliates.

12. Investments in any opportunity were sold according to the terms of a Private Offering Memorandum that was tailored for each individual opportunity.

13. Prodigy acted as the Investment Manager for every investment opportunity offered through their subsidiaries and affiliates according to the terms of the applicable Private Offering Memorandums (generally, the "Memos").

14. In addition, Prodigy, in its role as Investment Manager, was responsible for the formation of a "NewCo" to correspond to each investment opportunity offered. These NewCos served as the vehicle through which foreign investors, such as the Plaintiff here, would invest in any given opportunity.

15. Prospective investors would make an equity investment and/or a loan to the NewCo, which would in turn dump the proceeds of the equity investment and/or loan to the capital of the corresponding Master Series of the Prodigy Shorewood Master REP Fund, LLC, in exchange for interests in the aforementioned Master Series.

16. To entice investors to participate in the various opportunities marketed, Prodigy offered initial equity investors, such as the Plaintiff, opportunities to invest with a voluntary redemption option, or some form of guaranteed right to distribution. An initial equity investor could redeem

its investment plus 18% interest after 12-months simply by providing Prodigy Network with a 90-day written redemption notice, or enjoy the right to a return of its investment plus varying rates of interest at a pre-determined time in the life of the investment.

17. Plaintiff did invest in various opportunities as marketed by and through Prodigy.  Plaintiff did begin to invest with the Defendants in or around August 2016, concluding in or around May 2018.

18. In order to make any investment, the prospective investor first had to sign a Subscription Agreement, which incorporated by reference the terms of the Private Offering Memorandum and any amended, restated, or supplemental addendum thereto.

19. A brief discussion of Shui's particular investments with Prodigy and its various subsidiaries and affiliates that are named as Defendants in this action follows:

   A.   **Prodigy Shorewood Domestic Feeder REP Fund, LLC**

20. Plaintiff Shui invested in an opportunity located at 114 East 25th Street, New York, New York that was marketed by Prodigy.

21. Investment interests in the 114 East 25th Street opportunity were sold pursuant to a Private Offering Memorandum of Prodigy Shorewood Master REP Fund, LLC, Prodigy Shorewood Domestic Feeder REP Fund, LLC, and Prodigy Shorewood New York REP Fund, LLC; and a Supplement thereto, both dated from August 14, 2015 (the "25th Street Memo").

22. Section XI of the 25th Street Memo provided that "[u]nless otherwise specified in the applicable Supplement, an Investor may not voluntarily redeem its interest."

23. Section VI of the 25th Street Memo provided that "Prodigy Network, LLC (*or an affiliate thereof*) will serve as the Investment Manager of each series of the Master Fund, each series of the Domestic Feeder, each series of the Offshore Feeder and each NewCo" (emphasis added).  The

Shorewood Fund was administered by NESF Fund Services Corp. and NESF was tasked with confirming each investment through the issuance of a "Contract Note" to the individual investor.

24. On or about August 29, 2016, Plaintiff Shanling Shui signed a Subscription Agreement for the Shorewood Class B Common Stock. Specifically, the Plaintiff agreed to purchase membership interests in Shorewood in the form of Class B Common Stock in the amount of $500,000. The NESF Contract Note was issued to Plaintiff Shui on September 12, 2016.

**B.  17 John Preferred, Inc.**

25. Plaintiff Shanling Shui invested in an opportunity located at 17 John Street in New York's financial district and marketed by Prodigy.

26. The opportunity at 17 John Street was marketed to Plaintiff Shanling Shui through marketing materials provided by Colin Serling, a Client Relationship Associate of Prodigy Network.

27. Investment opportunities in this particular offering were sold pursuant to an Amended and Restated Confidential Private Offering Memorandum of Preferred, dated March 15, 2017 (the "Preferred Memo").

28. Section X of the Preferred Memo provided that "With respect to (i) the Domestic Feeder, the term "Interests" shall refer to the membership interests of a series of the Domestic Feeder relating to a series of the Master Fund; (ii) the Offshore Feeder, the term "Interests" shall refer to the LP Interests of the Offshore Feeder relating to a series of the Master Fund; and (iii) a NewCo, the term "Interests" shall refer to common stock issued by such NewCo. The term "Investor" shall refer to a holder of Interests."

29. Section XI of the Preferred Memo provided that "Holders of Class-B Common Stock may not voluntarily redeem such stock without written consent of the Investment Manager." However, after 2 years of ownership, the holder was entitled to request redemption at a return rate of 20%.

30. Section VI of the Preferred Memo provided that "Prodigy Shorewood Investment Management, LLC (*or an affiliate thereof*) will serve as the investment manager of the JV and the Pref Fund[1]." (emphasis added). The Pref Fund was administered by NESF Fund Services Corp. and NESF was tasked with confirming each investment through the issuance of a "Contract Note" to the individual investor.

31. On or about July 27, 2017, Plaintiff Shui signed a Subscription Agreement for the Preferred Class B Common Stock and Class Investor Loan. Specifically, Plaintiff agreed to purchase membership interests in Preferred in the form of Class B Common Stock in the amount of $125,000, and to make a Class A Investor Loan to Preferred, in the amount of $375,000. The NESF Contract Note was issued to Plaintiff Shui on August 14, 2017.

32. On or about July 27, 2017, Plaintiff Shui also signed a Side Letter Agreement. The Side Letter Agreement provided that Plaintiff Shui had the right to request the sale of its interests in Preferred subject to certain restrictions and conditions.

C. **84 William Street NewCo, Inc.**

33. Plaintiff Shanling Shui, in addition to investing in the Preferred and Shorewood projects that were marketed by Prodigy, did also invest in an opportunity located at 84 William Street, New York, New York.

---

[1] The term "Pref Fund" is the term used in the Preferred Offering Memo to describe investments made into Preferred.

6

34. Investment interests in the Project were sold pursuant to an Amended and Restated Confidential Private Offering Memorandum of Prodigy Shorewood Master REP Fund, LLC; Prodigy Shorewood Domestic Feeder REP Fund, LLC; 84 William Street NewCo, Inc; and Prodigy Shorewood New York REP Fund, LP dated September 21, 2016, (the "84 William Memo").

35. Page 10 of the 84 William Memo provided that "With respect to (i) the Domestic Feeder, the term "Interests" shall refer to the membership interests of a series of the Domestic Feeder relating to a series of the Master Fund; (ii) the Offshore Feeder, the term "Interests" shall refer to the LP Interests of the Offshore Feeder relating to a series of the Master Fund; and (iii) a NewCo, the term "Interests" shall refer to common stock issued by such NewCo. The term "Investor" shall refer to a holder of Interests."

36. Section XI of the 84 William Memo provided that "[a]n Investor may not voluntarily redeem its Interest."

37. Section VI of the 84 William Memo provided that Prodigy Shorewood Investment Management, LLC, a Delaware limited liability company, shall serve as the Investment Manager. The 84 William Fund was administered by NESF Fund Services Corp. and NESF was tasked with confirming each investment through the issuance of a "Contract Note" to the individual investor.

38. On or about March 28, 2018, Plaintiff Shui signed a Subscription Agreement for 84 William, Class B Common Stock and a Class Investor Loan. Specifically, Plaintiff Shui agreed to purchase membership interests in 84 William Common B Stock in the amount of $200,000 and make a Class A Investor Loan to 84 William Street, in the amount of $300,000. The NESF Contract Note was issued to Plaintiff on April 12, 2018.

39. On March 31, 2018, the Plaintiff and the investment manager executed a Side Letter Agreement wherein, Prodigy, through its affiliate acting as investment manager for the fund, agreed to provide the Plaintiff with a guaranteed right to some form of capital distribution from the fund, either in the form of a percentage of the distributions otherwise due to investors, or to divert the fee that would otherwise go to the investment manager and distribute that to the investors.

### D. PN NewCo, Inc.

40. Finally, Plaintiff Shanling Shui did invest in an opportunity that would appear not to have been associated with any single property but rather was an effort to raise capital by Prodigy.

41. PN NewCo, Inc., was marketed to Plaintiff Shui as an existing investor.

42. Investment interests in the Project were sold pursuant to an Amended and Restated Confidential Private Placement Memorandum of Prodigy Network, LLC; and PN NewCo, Inc; dated May 6, 2018, (the "PN Memo"). Additionally, the PN Memo was supplemented with a Side Letter Agreement.

43. The PN Memo indicates that a separate limited liability entity would act as the Manager of the Fund, and that Prodigy's former Director, Rodrigo Niño, was in charge of that separate entity. However, it is obvious that the PN Fund was administered by NESF Fund Services Corp., and NESF was tasked with confirming each investment through the issuance of a "Contract Note" to the individual investor.

47. The PN Memo further represents that the offering is comprised of "interests in PN Newco, Inc., a Delaware corporation ("NewCo"), comprised of Class B Common Stock and NewCo Loans."

48. On or about May 23, 2018, Plaintiff Shui signed a Subscription Agreement for PN Class B Common Stock and a Class Investor Loan. Specifically, the Plaintiff agreed to purchase interests

in PN in the form of Common B Stock in the amount of $125,000 and make a Class A Investor Loan to PN in the amount of $375,000. The NESF Contract Note was issued to Plaintiff Shui on June 20, 2018.

49. The Class A Investor Loan was scheduled to mature three (3) years after the date of issuance, subject to three (3) one (1) year extensions, and earn 16.5% interest per annum.

50. After making the aforementioned investments, Plaintiff Shui did enjoy the benefit of receiving periodic reports from the Defendants, such as Capital Statements, Distribution Statements, and other Investor Reports (collectively, the "Reports").

51. The Reports were issued on regular intervals, quarterly or otherwise semi-annually. Plaintiff received the last Reports on her investments during spring 2019. Plaintiff did make several requests for the expected reports.

52. After the unexplained cessation of the Reports, Plaintiff Shui learned that Prodigy was experiencing difficulties meeting its financial obligations, due to mismanagement and other questionable business practices.

53. In or around May 2019, Plaintiff learned that Prodigy's former Chief Operating Officer, Vincent Mikolay, had filed a lawsuit against Prodigy and its former manager, Rodrigo Nino, for defaulting on payment of a redemption request for a unit Prodigy had issued. As part of that action, Mikolay argued that Prodigy was suffering cash flow problems due to "Rodrigo Nino's poor management and irresponsible financial practices." Mikolay further argued that Prodigy and Nino were actually alter egos because corporate formalities were consistently ignored and because Prodigy's profits were used for personal expenses by Nino.

54. In or around June 2019, Prodigy, through one of its applicable affiliates, suspended any bi-annual return payments to investors, including the Plaintiff, on any of its investment projects.

According to statements issued by the affiliates for each investment project, the subject investment projects were performing below original projections and subsequently, Prodigy had to contribute $2 million towards working capital, manager loans, and withholding collection of asset management fees, to cover future and present debt obligations as related to each project.

55. Upon information and belief, in a meeting with investors, Rodrigo Nino informed investors that the Defendants did not have enough capital to meet their financial obligations related to the various investment projects, including payment of any pending redemption requests.

56. Shui did timely exercise her right of voluntary redemption in accordance with the terms of the Preferred Memo and on or about August 8, 2019, submitted to Prodigy a written demand to redeem their equity investment and loan.

57. Pursuant to the Preferred Memo, as of September 9, 2019, Prodigy and Preferred were required to redeem the Plaintiff's investment.  To date, those Defendants have refused to honor Plaintiff's redemption demand.

58. Pursuant to the PN Memo, 84 William Memo, and Shorewood Memo, Plaintiff Shui was entitled to a return of her investments, plus interest at a certain date.  Unfortunately, in or around December 2019, NESF, in its capacity as Administrator of the various Prodigy funds, indicated that the various Prodigy funds' cash balances had decreased so as to leave insufficient funds to complete the projects.

59. Upon information and belief, Prodigy, its various affiliates, and subsidiaries are rapidly approaching insolvency, if that has not already occurred, and it is alleged that the Defendants have used Plaintiff's investments for reasons other than those relating to the projects in which the Plaintiff invested her funds, in clear violation of the terms of each aforementioned Memo.

## COUNT I – BREACH OF CONTRACT

60. Plaintiff realleges, reaffirms, and incorporates by reference paragraphs 1 through 59 above, as if fully set forth herein.

61. Plaintiff entered into valid and binding contracts with the Defendants upon the execution of each Subscription Agreement.

62. Plaintiff executed the Subscription Agreements and timely paid the respective investment amounts to the Defendants. Plaintiff fully performed her obligations under each respective Subscription Agreement and the documents incorporated therein.

63. Plaintiff sent a timely redemption demand to Defendants Prodigy and its affiliate Preferred, however Defendants Prodigy and Preferred have failed to honor this demand.

64. Under the terms of the individual contracts with Defendants Prodigy and its affiliates Shorewood, PN, and 84 William, Plaintiff was entitled to receive its respective initial investment plus interest.

65. Plaintiff has been damaged by the Defendants' breach of contract by at least $2 million plus interest.

66. Accordingly, Plaintiff Shui seeks judgment in her favor, and against the Defendants, for damages in an amount to be determined at trial.

## COUNT II – UNJUST ENRICHMENT

67. Plaintiff realleges, reaffirms, and incorporates by reference paragraphs 1 through 59 above, as if fully set forth herein.

68. Defendants were unjustly enriched at the expense of Plaintiff, particularly by diverting or appropriating Plaintiff's investment funds in order to enrich themselves.

69. It is against equity and good conscience to permit the Defendants' continued retention of funds which were diverted for their own use, including, upon information and belief, the personal expenses of current and former managers and officers.

70. As a direct and proximate result of the Defendants' wrongful diversion of the Plaintiff's investment funds, the Defendants have been unjustly enriched to the Plaintiff's detriment.

71. Accordingly, the Plaintiff is entitled to judgment in her favor for the full amount by which the Defendants have been enriched, in an amount to be determined at trial.

## COUNT III – BREACH OF FIDUCIARY DUTY

72. Plaintiff realleges, reaffirms, and incorporates by reference paragraphs 1 through 59 above, as if fully set forth herein.

73. Defendant Prodigy Network LLC (as the sole director of Defendants Preferred, 84 William, and PN, as well as the sole managing member of Defendant Shorewood) owes Plaintiff (as investor shareholder of Defendants Preferred, 84 William, and PN, and as investor member of Defendant Shorewood) a fiduciary duty or other trust-based duty with respect to the business and affairs of Defendants Preferred, 84 William, PN, and Shorewood.

74. Defendant Prodigy Network LLC has committed misconduct with respect to its fiduciary duties owed to the Plaintiff.

75. Such misconduct by Defendant Prodigy Network LLC includes violations of its duties of candor, loyalty, care, honesty, and/or self-dealing, with respect to its management of Defendants Preferred, 84 William, PN, and Shorewood.

76. The Plaintiff has been directly damaged as a result of Defendant Prodigy's misconduct in an amount to be proven at trial.

## COUNT IV – EQUITABLE ACCOUNTING

77. Plaintiff realleges, reaffirms, and incorporates by reference paragraphs 1 through 59 above, as if fully set forth herein.

78. Defendant Prodigy Network LLC (as the sole director of Defendants Preferred, 84 William, and PN, as well as the sole managing member of Defendant Shorewood) owes Plaintiff (as investor shareholder of Defendants Preferred, 84 William, and PN, and as investor member of Defendant Shorewood) a fiduciary duty or other trust-based duty with respect to the business and affairs of Defendants Preferred, 84 William, PN, and Shorewood.

79. As a result of this fiduciary or other trust-based duty between Defendant Prodigy Network LLC, as the managing director of Defendants Preferred, 84 William, and PN, and as the sole managing member of Defendant Shorewood, and the Plaintiff as an investor shareholder and investor member, the Plaintiff is entitled to an accounting with respect to Defendants Preferred, 84 William, PN, and Shorewood.

80. Plaintiff has previously demanded such an accounting from each Defendant after the cessation of the Reports. Such accounting information was normally provided to Plaintiff in the form of the Reports from the Defendants, in regular intervals.

81. The Defendants have failed and/or refused to provide such an accounting to the Plaintiff.

82. Upon information and belief, this refusal is based entirely on the Defendants need to conceal the extent of their misconduct in derogation of the Plaintiff's rights.

83. An accounting is necessary to determine Plaintiff's monetary damages and/or to determine the true and complete picture of Defendants Preferred, 84 William, PN, and Shorewood's financial affairs. An accounting is also necessary to determine Defendant Prodigy's financial affairs as may be related to Plaintiff's damages.

84. The accounting is applicable to Defendants Preferred, 84 William, PN, and Shorewood for each annual year of their operation and management by Defendant Prodigy, and for Defendant Prodigy for the same period of time.

### COUNT V – DEMAND FOR INSPECTION OF BOOKS AND RECORDS

85. Plaintiff realleges, reaffirms, and incorporates by reference paragraphs 1 through 59 above, as if fully set forth herein.

86. Plaintiff is an investor shareholder of Defendants Preferred, 84 William, and PN, each of which is a Delaware corporation, with their principal places of business in New York, New York.

87. Plaintiff is an investor member of Defendant Shorewood, a Delaware limited liability company, with its principal place of business in New York, New York.

88. Upon information and belief, Defendant Prodigy, in its capacity as the sole managing director of Defendants Preferred, 84 William, and PN and in its capacity as sole managing member of Defendant Shorewood, has committed various acts of misconduct and breached various fiduciary duties owed to investor shareholder Plaintiff.

89. Section 624(b) of the New York Business Corporation Law (the "BCL Law") permits a shareholder to inspect and make extracts thereof the books and records of a corporation, as defined under subsection (a), upon at least 5 days written notice to the corporation.

90. Plaintiff has made such a good faith written demand upon Defendants by letter.

91. Section 1102(b) of the New York Limited Liability Law (the "LLC Law") provides that any member may, subject to the reasonable standards as may be set forth in, or pursuant to, the operating agreement, inspect and copy at their own expense, for any purpose reasonably related to the member's interest as a member, the records referenced in subsection (a), any financial

14

statements maintained by the limited liability company for the three most recent fiscal years and other information regarding affairs of the limited liability company as is just and reasonable.

92. Plaintiff is entitled, pursuant to the BCL Law, the LLC Law, to inspect the books and records of the Defendants.

93. In addition, Plaintiff is entitled under common law to inspect the books and records of the Defendants.

94. By reason of the foregoing, the Plaintiff is entitled to a declaratory judgment against Defendants Prodigy, Preferred, 84 William, PN, and Shorewood declaring that they each must grant the Plaintiff a full inspection of their books and records.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), the Plaintiff requests a trial by jury in this matter on all issues so triable.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Shanling Shui seeks judgment in her favor and against the Defendants Prodigy Network, LLC, Prodigy Shorewood Domestic Feeder REP Fund, LLC, 17 John Preferred, Inc., PN NewCo, Inc., and 84 William Street NewCo, Inc., for:

   a. Actual damages in an amount to be determined and proven at trial; and

   b. Interest and costs; and

   c. Plaintiff access and the right to inspect the Defendants books and records; and

   d. such other and equitable relief as this Court deems just and proper.

Dated: September 8, 2020
       New York, NY

                                                By: /s/ Katherine Burghardt Kramer
                                                    Katherine Burghardt Kramer
                                                    Rongping Wu

DGW KRAMER LLP
One Rockefeller Plaza; Ste. 1060
New York, NY 10020
T: (917) 688-2585
F: (917) 633-6183
kkramer@dgwllp.com
lwu@dgwllp.com
*Attorneys for Plaintiff*
